UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO THE UNITED STATES COAST GUARD | Case: 1:24–mc–00092<br>Assigned To : Friedrich, Dabney L.<br>Assign. Date : 7/24/2024<br>Description: Misc. (O–Deck) |
| STUDENTS FOR FAIR ADMISSIONS,<br><br>     *Plaintiff*,<br><br>v.<br><br>THE UNITED STATES NAVAL ACADEMY, *et al.*,<br><br>     *Defendants*. | Related Case:<br>No. 1:23-cv-02699<br>(District of Maryland) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    A.   The Underlying Litigation. ......................................................................................2

    B.   SFFA's Subpoenas to the Coast Guard ..................................................................2

ARGUMENT ......................................................................................................................... 3

I.    SFFA is entitled to the documents it seeks under Federal Rule of Civil Procedure 45. ......... 3

    A.   The subpoena seeks relevant information. ............................................................4

    B.   Complying with the subpoena will not impose an undue burden. .........................6

CONCLUSION...................................................................................................................... 8

i

## TABLE OF AUTHORITIES

**Cases**

*Fisher v. Univ. of Texas at Austin,*
  570 U.S. 297 (2013) ............................................................................................................. 4

*Grutter v. Bollinger,*
  539 U.S. 306 (2003) ............................................................................................................. 2

*In re Barnwell Enterprises Ltd,*
  265 F. Supp. 3d 1 (D.D.C. 2017) ......................................................................................... 8

*In re Denture Cream Prod. Liab. Litig.,*
  292 F.R.D. 120 (D.D.C. 2013) ............................................................................................. 4

*McDowell v. Gov't of D.C.,*
  233 F.R.D. 192 (D.D.C. 2006) ............................................................................................. 7

* *Stati v. Republic of Kazakhstan,*
  2020 WL 3259244 (D.D.C. June 5, 2020) .................................................................. 6, 7, 8

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
  600 U.S. 181 (2023) ............................................................................................................. 2

*United States ex rel. Touhy v. Ragen,*
  340 U.S. 462 (1951) ............................................................................................................. 4

* *US Dominion Inc. v. My Pillow Inc.,*
  2024 WL 2880425 (D.D.C. June 7, 2024) ........................................................................ 3, 4

*Watts v. S.E.C.,*
  482 F.3d 501 (D.C. Cir. 2007) ............................................................................................. 4

*Wygant v. Jackson Bd. of Educ.,*
  476 U.S. 267 (1986) ............................................................................................................. 4

**Other Authorities**

Br. of United States as *Amicus Curiae* in Supp. of Resp'ts 17, *Students for Fair Admissions v. President and Fellows of Harvard College,*
  2022 WL 3108833, No 20-1199 (U.S. August 1, 2022) ...................................................... 6

O.A. Tr.19-22, *Grutter v. Bollinger,*
  02-241 (U.S. April 1, 2003) ................................................................................................. 6

**Rules**

Fed. R. Civ. P. 26 ...................................................................................................................... 8

* Fed. R. Civ. P. 45 .............................................................................................................. 3, 8

## INTRODUCTION

In October 2023, Students for Fair Admissions ("SFFA") sued the United States Naval Academy, alleging that its race-based admissions process is unconstitutional. Because the Naval Academy admits that it uses race in the admissions process, one of the key issues in the case is whether the Naval Academy has race-neutral alternatives. SFFA says that race-neutral alternatives are available. For proof, SFFA has repeatedly pointed to the example of the United States Coast Guard Academy, which successfully increased minority admissions from 2008 to 2010 using race-neutral policies.

SFFA recently served a subpoena *duces tecum* on the United States Coast Guard to obtain additional information about the Coast Guard Academy's efforts and results. SFFA requested documents concerning (1) the Coast Guard Academy's efforts to boost minority admissions during the relevant period and (2) basic admissions statistics, *viz.*, the total number of applicants, admitted students, matriculants, and graduates broken down by race for the Coast Guard Academy classes from 2008 to 2017.

Yet the Coast Guard refuses to produce any of these documents. The Coast Guard concedes that it has records responsive to SFFA's subpoena, but it claims that SFFA's subpoena is irrelevant, overly burdensome, and deficient under Rule 45 and the Coast Guard's housekeeping regulations.

These arguments all fail. The requested documents are probative of a key issue in the underlying case: the feasibility of race-neutral alternatives in admissions to a service academy. Nor do the Coast Guard's excuses regarding burden pass muster. This Court should order the Coast Guard to comply with the subpoena.

## BACKGROUND

A.     **The Underlying Litigation.**

On October 5, 2023, SFFA sued the Naval Academy and other government defendants, alleging that the Naval Academy's use of race in the admissions process is unconstitutional. *See* Ex. F, *Students for Fair Admissions v. Naval Academy*, No. 23-cv-2699-ABA, Dkt. 1 (D. Md.). Because the Academy admits that it uses race in the admissions process, strict scrutiny applies. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 214 (2023). As such, the Naval Academy must show, among other things, that it engaged in a "serious, good faith consideration of workable race-neutral alternatives." *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003).

Relevant here, SFFA alleges that the Naval Academy's use of race is unlawful because the Academy could achieve student body diversity through race-neutral means. In its Complaint, SFFA alleged:

> The Coast Guard Academy provides a real-world example. Until 2010, that academy was prohibited by federal statute from using racial preferences in its admissions process. In the two years before the Coast Guard Academy began considering race, it launched an aggressive advertising and recruiting campaign targeting minorities. At the end of those two years, the Coast Guard Academy had increased minority enrollment by 60%—from 15% to 24%. Those numbers were within a few percentage points of the other academies, which had been using explicit racial preferences for years.

Ex. F at ¶101, 24-25.

Discovery is ongoing, and the case is scheduled for a two-week bench trial before Judge Bennett starting on September 9, 2024. *See Naval Academy*, No. 23-cv-2699-ABA, Dkt. 71.

B.     **SFFA's Subpoenas to the Coast Guard**

Last month, SFFA served a subpoena *duces tecum* on the United States Coast Guard, seeking three categories of information related to the Coast Guard Academy's strategies to increase

2

minority admissions from 2008 and onward. *See* Ex. C at 7. In response, the Coast Guard served objections to the subpoena on SFFA and declined to produce any records. *See* Ex. D. The Coast Guard refused to produce the requested records, claiming, among other things, that SFFA's request was "unduly burdensome and inappropriate" and "not in the public interest." *See* Ex. D at 2-4.

In response to the Coast Guard's objections, SFFA issued a more limited subpoena, eliminating one of its original requests and clarifying the scope of its remaining requests. Ex. A. This second subpoena seeks only the following categories of documents:

> 1. All documents from the Relevant Period prepared by You concerning any programs, initiatives, strategies, plans, or other organized efforts undertaken for the purpose of (a) increasing the number of racial or ethnic minority students who applied, were admitted, and/or matriculated to the Coast Guard Academy; or (b) increasing the percentage of all applicants, admitted students, and/or matriculants to the Coast Guard Academy who are racial or ethnic minorities, including but not limited to the strategies discussed in the following article: Jennifer McDermott, *Coast Guard Cadet Diversity Surges With Minority Wave*, The Day (July 5, 2010), perma.cc/U4AR-MJQV.
>
> 2. Documents sufficient to show the total number of applicants, admitted students, matriculants, and graduates of each race for the Coast Guard Academy Classes of 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, and 2017.

Ex. A at 7.

On July 10, 2024, the Coast Guard objected again and refused to produce records. *See* Ex. B. The Coast Guard refused to comply with SFFA's subpoena largely "for the same reasons as before." Ex. B at 1-3.

## ARGUMENT

**I.    SFFA is entitled to the documents it seeks under Federal Rule of Civil Procedure 45.**

Rule 45 governs third party subpoenas. *See* Fed. R. Civ. P. 45. "When a third party lodges timely objections to a subpoena, the serving party 'may move the court for the district where compliance is required for an order compelling production or inspection.'" *US Dominion Inc. v. My Pillow Inc.*, 2024 WL 2880425, at *3 (D.D.C. June 7, 2024) (quoting Fed. R. Civ. P.

3

45(d)(2)(B)). "When considering a motion to compel under Rule 45, a court 'must first consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation.'" *Id.* (citations omitted). "If relevance is established, the Court considers objections to the subpoena under Rule 45, including whether the subpoena requests privileged material or would cause an undue burden on the third party." *Id.* "It falls on the objecting party to show that compliance would pose an undue burden." *Id.* An agency's *Touhy* regulations "do not alter the procedures set forth in the Federal Rules of Civil Procedure or preclude the production of documents that are relevant to a judicial proceeding.'" *Id.* at *4 (cleaned up); *accord Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007) (*Touhy* regulations do not confer a privilege or other basis for objecting to a subpoena); *see also United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). SFFA satisfies both requirements.

      **A.**    **The subpoena seeks relevant information.**

"[W]ith respect to a Rule 45 subpoena, a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *In re Denture Cream Prod. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) (cleaned up). In the underlying litigation, a key issue is whether the Naval Academy has "workable race-neutral alternatives" available. *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 312 (2013); *accord Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 n.6 (1986) (narrow tailoring "require[s] consideration of whether lawful alternative[s] and less restrictive means could have been used").

In its prior preliminary-injunction motion, SFFA explained the importance of the Coast Guard's history to this case:

> The [Naval] Academy has no studies, reports, or experiments "carefully considering" race-neutral alternatives. Yet the Coast Guard Academy provides a real-world example that these alternatives can (and do) work. Until 2010, that academy was prohibited from using racial preferences in its admissions process. See Ex. aa at 1. In the two years before the Coast Guard began considering race, it launched an aggressive advertising and recruiting campaign targeting minorities. *Id.* at 2. At the end of those two years, the Coast Guard had increased minority

4

enrollment by 60%, from 15% to 24%. Ex. bb at 1-2. Those numbers were within a few percentage points of the other academies (which had been using explicit racial preferences for years), *see, e.g.,* Ex. cc, and nowhere does the Naval Academy try to prove that the difference stopped the Coast Guard from achieving its asserted interests.

Ex. G, Memo in Supp. of Mot. for Prel. Inj., *Naval Academy*, No. 23-cv-2699-ABA, Dkt. 9-1 at 16 (citing Dkt. 9-7 at 276, 282-83, 292).

Here, SFFA's two discovery requests seek additional evidence to undermine the Naval Academy's assertion that no race-neutral alternatives exist. SFFA's first request seeks details about the Coast Guard Academy's race-neutral admissions strategies to show that the Naval Academy failed to consider lawful alternatives. SFFA's second request seeks demographic statistics on the Coast Guard Academy's classes to rebut the Naval Academy's claim that race-neutral alternatives are unworkable or unsuccessful.

The Coast Guard does not dispute that SFFA's first request seeks relevant information. The Coast Guard only disputes the relevance of SFFA's second request, which seeks statistics on the demographic makeup of applicants, admitted students, and matriculants to the Coast Guard Academy over a ten-year period. *See* Ex. A at 7. The Coast Guard's sole argument is that the Coast Guard Academy and the Naval Academy have "admissions processes [that] are too dissimilar to offer a useful comparison." Ex. D at 3. But this argument misses the mark.

The Naval Academy and the Coast Guard are obviously useful comparisons. Both are service academies and both have similar missions.[1] The United States also has conceded that the

---

[1]*Compare* Ex. H, United States Coast Guard Academy, *Mission*, (accessed July 22, 2024), https://perma.cc/5XD7-2TYK ("To graduate young men and women with sound bodies, stout hearts, and alert minds, with a liking for the sea and its lore, and with that high sense of honor, loyalty, and obedience which goes with trained initiative and leadership; well-grounded in seamanship, the sciences, and amenities, and strong in the resolve to be worthy of the traditions of commissioned officers in the United States Coast Guard in the service of their country and humanity."), *with* Ex. I, United States Naval Academy, *Mission of USNA*, (accessed July 22, 2024),

5

service academies have similar applicant pools and admissions procedures. *See* Br. of United States as *Amicus Curiae* in Support of Resp'ts 17, *SFFA v. Harvard*, 2022 WL 3108833, No 20-1199 (U.S. August 1, 2022) (explaining that "[t]he service academies" all draw from "a nationwide applicant pool and require a combination of academic excellence, leadership skills, physical ability, and personal character for success"). The United States in *Grutter* likewise pointed to the Coast Guard Academy as evidence that "race neutral" alternatives are available and "should be used in the [service] academies." O.A. Tr.19-22, *Grutter v. Bollinger*, 02-241 (U.S. April 1, 2003). Differences in the two academies' admissions processes or class size does not eliminate the relevance of the Coast Guard Academy's experience. Indeed, the fact that SFFA has repeatedly pointed to the historical example of the Coast Guard—in its complaint and both preliminary-injunction filings—should remove any doubt as to the relevance of this issue. *See* Ex. F at ¶101, 24-25; Ex. G at 20-21; *see also* Reply in Supp. of Mot. for Prel. Inj. *Naval Academy*, No. 23-cv-2699-ABA, Dkt. 54 at 10, 31-32.

**B.    Complying with the subpoena will not impose an undue burden.**

"The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *Stati v. Republic of Kazakhstan*, 2020 WL 3259244, at *4 (D.D.C. June 5, 2020). "A party resisting a subpoena on undue burden grounds 'cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the

---

https://perma.cc/AJK2-R83F ("To develop Midshipmen morally, mentally and physically and to imbue them with the highest ideals of duty, honor and loyalty in order to graduate leaders who are dedicated to a career of naval service and have potential for future development in mind and character to assume the highest responsibilities of command, citizenship and government.").

6

subpoena.'" *Id*. (quoting Wright & Miller, *Federal Practice and Procedure* §2463.1 (3d ed. 2008)).

To begin, the Coast Guard never asserts that it would be an undue burden to comply with SFFA's second request for admissions statistics. Nor could it. The request simply seeks basic numbers and demographic statistics about the Coast Guard's classes over a ten-year period—information that the Coast Guard admits that it has and thus could presumably easily produce. Ex. A at 7; Ex. D at 3. And the Coast Guard regularly publishes similar information in digest form. *See, e.g.*, Ex. E.

The Coast Guard offers a handful of reasons for why SFFA's first request would cause it an "undue burden," *see* Ex. B at 3; Ex. D at 3, but none is persuasive. As an initial matter, the Coast Guard cannot claim undue burden because it failed to "actually conduct[] a preliminary search to determine the nature and scope of its records," which is a "crucial[]" aspect of demonstrating burden. *Stati*, 2020 WL 3259244, at *9. The Coast Guard speculates that the responsive documents "*likely* have been destroyed" and that it would be burdensome to search for documents that "*might* not have been disposed of." Ex. D. at 2 (emphasis added). But speculation is no substitute for a good-faith effort to determine the scope of responsive documents *before* claiming it would be burdensome to produce them.

The Coast Guard also has failed to "show[] the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." *Stati*, 2020 WL 3259244, at *4. The Coast Guard offers only nebulous excuses about "understaff[ing]," the pending retirement of its Director of Admissions, and the fact that its records are "not well organized" or "might have been destroyed." Ex. D at 2. But "to allow a defendant [who] generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue

7

burden, would defeat the purposes of the discovery rules." *McDowell v. Gov't of D.C.*, 233 F.R.D. 192, 203 (D.D.C. 2006) (cleaned up). These excuses fall well short of demonstrating why it would be unduly burdensome for the Coast Guard to, in its own words, "search shared electronic drives and remotely stored physical files" for responsive documents. Ex. D at 2.

That the documents in question were apparently created by Coast Guard Admissions officers who are no longer with the Coast Guard Academy is also irrelevant. *See* Ex. D at 2. Rule 45 requires a party to "produce … documents, electronically stored information, or tangible things in [its] possession, custody, or control." Fed. R. Civ. P. 45; *In re Barnwell Enterprises Ltd*, 265 F. Supp. 3d 1, 16 (D.D.C. 2017) (control includes "the right, authority, or practical ability to obtain the documents"). The Coast Guard does not dispute that it possesses the requested documents and concedes that it has the right and ability to search its shared electronic drives and physical for them. Ex. D at 2. To the extent the Coast Guard possesses or controls responsive documents, it must produce them.

Finally, even if SFFA's request imposes some burden, "'the importance of the issues at stake in the action'" far outweighs any inconvenience to the Coast Guard. *Stati*, 2020 WL 3259244, at *4 (quoting Fed. R. Civ. P. 26). SFFA has alleged that one of the nation's most prestigious military institutions is engaging in unconstitutional race-based discrimination despite the existence of race-neutral alternative means. The importance of this case weighs heavily in favor of SFFA.

## CONCLUSION

The Court should grant this motion and enter an order compelling the Coast Guard to produce the requested documents within fourteen days from the Court's order.

<table>
<tr><td>Date: July 24, 2024</td><td>Respectfully submitted,<br><br>J. Michael Connolly<br>Thomas R. McCarthy<br>Cameron T. Norris<br>Brandon Haase<br>CONSOVOY MCCARTHY PLLC<br>1600 Wilson Blvd., Suite 700<br>Arlington, VA 22209<br>(703) 243-9423<br>tom@consovoymccarthy.com<br>mike@consovoymccarthy.com<br>cam@consovoymccarthy.com<br>brandon@consovoymccarthy.com</td></tr>
</table>

*Counsel for Movant Students for Fair Admissions*

9

## CERTIFICATE OF SERVICE

On July 24, 2024, I hereby certify that I served this filing on counsel of record listed below by email and first-class mail, postage pre-paid:

Joshua Gardner
Civil Division, Federal Programs Branch
UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 514-4336
joshua.e.gardner@usdoj.gov

*Counsel for the United States Naval Academy*

Brian Judge
Office of Claims and Litigation
UNITED STATES COAST GUARD
Commandant CG-LCL,
US Coast Guard HQ,
2703 Martin Luther King Jr. Ave. SE,
Stop 7213,
Washington, DC 20593-7213
(202) 372-3740
brian.judge@uscg.mil

*Counsel for the United States Coast Guard*

By: /s/ Brandon Haase

Brandon Haase (DC Bar No. 1616834)
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
brandon@consovoymccarthy.com

*Counsel for Movant
Students for Fair Admissions*

10