UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO THE UNITED STATES COAST GUARD | No. 1:24-mc-00092-DLF |
| STUDENTS FOR FAIR ADMISSIONS,<br><br>   *Plaintiff*,<br><br> v.<br><br>THE UNITED STATES NAVAL ACADEMY, *et al.*,<br><br>   *Defendants*. | District of Maryland<br>No. 1:23-cv-02699-RDB |

## NON-PARTY UNITED STATES COAST GUARD'S
## OPPOSITION TO MOTION TO COMPEL

  The underlying litigation in this case challenges the United States Naval Academy's limited consideration of race in its admissions process, and trial begins in the District of Maryland on September 16, 2024. Yet Students for Fair Admissions' ("SFFA") motion to compel seeks irrelevant, unduly burdensome discovery, across a period of more than ten years, from a non-party to the litigation, about the United States Coast Guard Academy—a different service academy under a different Executive Department that employs a different admissions process. And SFFA seeks this irrelevant, unduly burdensome third-party information when discovery closes and trial exhibit lists are due in less than two weeks, motions *in limine* are due in less than three weeks, and trial begins in a mere six weeks. SFFA's motion should be denied.

## BACKGROUND

  SFFA initiated the underlying litigation against the Naval Academy in the District of

1

Maryland in October 2023, and sought expedited resolution, first through a motion for preliminary injunction (which the court denied) and then through an expedited discovery and pre-trial schedule. No. 1:23-cv-2699, Dkt. Nos. 1, 9, 59 (D. Md.). Under that expedited schedule, fact discovery opened in January 2024 and closes on August 14, 2024; witness and exhibit lists are due August 14, 2024; motions *in limine* and Rule 26(a)(3) objections are due August 21, 2024; the pre-trial conference and motions *in limine* hearing will be held on September 5, 2024; and trial will begin on September 16, 2024. *Id.*, Dkt. Nos. 61, 71.

SFFA served expansive discovery requests on the Naval Academy at its first opportunity in January 2024, and served additional requests over the following months. Yet despite SFFA's belief as early as its October 2023 Complaint that information about the Coast Guard Academy is somehow relevant to its claims against the Naval Academy, *see* Dkt. No. 1 at 2, SFFA took no action over nearly the entirety of the discovery period to pursue such information. Rather, SFFA waited until June 7, 2024 to issue its first subpoena to the Coast Guard. Dkt. No. 1-2, Ex. C. The Coast Guard timely objected and provided a detailed response on June 18, 2024. *Id.*, Ex. D. In that response, the Coast Guard alerted SFFA to the requisite process under its *Touhy* regulations and explained that both under *Touhy* and Rule 45, SFFA sought third-party discovery that was not relevant and imposed significant burden. *Id.*; *see also, e.g. Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) ("[D]iscovery under Rules 26 and 45 must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'").

SFFA did not respond to the Coast Guard, serve a *Touhy* request in accordance with applicable regulations, or otherwise contact the Coast Guard to attempt resolution of its objections. Ex. 1, Declaration of Brian Judge, ¶ 3. Instead, SFFA served a second, successive subpoena on

2

June 26, 2024, that was largely identical to its first. Dkt. No. 1-2, Ex. A. SFFA's second subpoena made only three changes:

- SFFA changed the definition of "You" from the entire "United States Coast Guard and all of its sub-components, to include the United States Coast Guard Academy, and all present and former secretaries, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals," *see* Dkt. No. 1-2 at 27 ¶ 13, to "(a) the Office of The U.S. Coast Guard Headquarters, including the Office of the Commandant, Vice Commandant, and Chief Petty Officer of the United States Coast Guard; and (b) the Board of Visitors, Board of Trustees, Office of the Superintendent, Office of the Assistant Superintendent, Office of the Command Master Chief, and Admissions Office of the United States Coast Guard Academy, and all present and former officers or persons acting for or on behalf of any of these entities or individuals," *see* Dkt. No. 1-2 at 12 ¶ 13.

- SFFA withdrew one request, for "All communications from the Relevant Period by or among Your employees or agents regarding the programs, initiatives, strategies, plans, or organized efforts referenced in [Request] 1." *Compare* Dkt. No. 1-2 at 29, *with id.* at 14.

- SFFA withdrew an instruction that "These requests shall be deemed to be continuing so as to require supplemental answers from time to time until the date of trial." *Compare* Dkt. No. 1-2 at 29 ¶ 9, *with id.* at 13.

SFFA's remaining requests in its second subpoena were identical to those in its first subpoena. *Compare* Dkt. No. 1-2 at 26-29, *with id.* at 11-14. The Coast Guard again timely objected and provided a detailed response on July 10, 2024. Dkt. No. 1-2, Ex. B. The Coast Guard reiterated that the requests in SFFA's second subpoena reflected the same issues previously identified, that SFFA had once again failed to comply with applicable *Touhy* regulations, and that "any future Touhy request from you in connection with this litigation" must comply with the identified regulations. *Id.*

SFFA still did not take corrective action. Instead, SFFA informed the Coast Guard that it intended to move to compel. Ex. 1, ¶ 6. When asked if there were opportunities to narrow the areas of disagreement, the Coast Guard responded that because SFFA had not responded to either of the Coast Guard's letters, it was not in a position to determine whether there were such opportunities. *Id.* The Coast Guard thus invited SFFA once again to provide "any such response or … any

3

suggestions for narrowing [SFFA's] requests." *Id.* SFFA did not do so. Rather, after more than a week of silence, SFFA called the Coast Guard on July 24, 2024 and stated that it would move to compel. Ex. 1, ¶ 7. SFFA filed the instant motion that same day.

## ARGUMENT

I. **The Court Should Transfer the Motion to the District of Maryland District Court Presiding Over the Underlying Litigation**

As an initial matter, "[w]hen the court where compliance is required did not issue the subpoena," the compliance court may transfer a subpoena-related motion to the issuing court in either one of two conditions: (1) "the person subject to the subpoena consents" or (2) "the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

Here, the person subject to the subpoena, non-party Coast Guard, consents to and requests transfer of this motion to the Maryland District Court, given that Judge Bennett "is in a better position to rule on the [] motion to compel in light of [his] history and familiarity with the parties and the issues underlying the subpoena dispute," and "the risks of delaying" the impending pre-trial and trial deadlines established by Judge Bennett's case management order. *Honeywell Int'l Inc. v. Law Offices of Peter T. Nicholl*, 2022 WL 43494, at *4 (D.D.C. Jan. 5, 2022). "[T]he rule plainly affords the nonparty a modicum of choice," and when the nonparty consents to transfer, there is "no impediment to granting that request." *Bogard Constr. Inc. v. Oil Price Info. Serv.*, 2022 WL 1213307, at *3 (D. Md. Apr. 25, 2022).

Although the Coast Guard's consent is dispositive on the issue of transfer, "exceptional circumstances" also warrant transfer. Fed. R. Civ. P. 45(f). "[S]ubstantial caselaw" establishes that the standard in Rule 45(f) is met "when the subpoena dispute implicates the underlying litigation and requires an understanding of the full scope of the underlying litigation to properly assess the need for subpoenaed documents." *In re Subpoena to Nat'l Acad. of Scis.*, 2024 WL 3370249, at

4

\*3 (D.D.C. July 10, 2024) (emphasizing that the issuing court is "in a much better position … to evaluate relevance" of the subpoena to the litigation, and collecting cases); *XY, LLC v. Trans Ova. Genetics,* 307 F.R.D. 10, 12 (D.D.C. 2014) (additionally looking to whether the issuing court "has already supervised substantial discovery and begun preparations for trial," and collecting cases). Moreover, when the motion (and its resolution) risks disrupting the issuing court's case management order, the issuing court "is better positioned to assess whether the value to be gained from [the subpoena] justifies a discovery modification." *CFA Inst. v. Am. Soc'y of Pension Pros.*, 2020 WL 1695050, at \*2 (D.D.C. Apr. 7, 2020).

Judge Bennett in the District of Maryland is intimately familiar with the issues in the litigation, against which the relevance of the subpoena must be assessed; has already supervised substantial discovery (which closes imminently) and resolved discovery disputes between the parties; and has established rapidly approaching pre-trial deadlines and scheduled trial to begin in a mere six weeks. These factors weigh overwhelmingly in favor of transfer.[1]

## II.  The Court Should Deny the Motion for Failure to Confer

Regardless of whether this motion is transferred to the District of Maryland, the Court should deny it due to SFFA's failure to satisfy its conferral obligations. *See* D.D.C. Loc. R. 7(m); D. Md. Loc. R. 104.7; *see also* Fed. R. Civ. P. 45(d)(1) (the issuing party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"). "[E]ven if the movant is sure that his opponent will not concede one inch of ground, he must still make a good-faith effort to confer," and that "obligation to confer may not be satisfied by perfunctory

---

[1] It is unclear why the motion is before this Court in the first place, considering that the issuing court is within 100 miles of the Coast Guard, Fed. R. Civ. P. 45(c)(2); SFFA's first subpoena listed its counsel's office in Virginia as the place of compliance, Dkt. No. 1-2 at 20; and its successive subpoena—the one at issue here—changed the place of compliance to a hotel in Washington, D.C. with no connection to the litigation, the parties, or non-party Coast Guard, *id.* at 5.

action." *United States v. All Assets*, 202 F. Supp. 3d 1, 6-7 (D.D.C. 2016). "[W]ait[ing] until the day of filing to call opposing counsel regarding the motion" is not sufficient. *Alberts v. HCA Inc.*, 405 B.R. 498, 501 (D.D.C. 2009). And when a non-party has provided its objections to a subpoena, the issuing party's failure to "attempt to narrow the scope of the document subpoena, offer to share the cost of compliance, or otherwise facilitate the resolution of the differences in position" demonstrates lack of "'sincere attempts' to resolve a discovery dispute." *Crete Carrier Corp. v. Sullivan*, 2022 WL 1203652, at *24 (D. Md. Apr. 21, 2022).

Here, SFFA made no effort to narrow areas of disagreement after receiving non-party Coast Guard's objections on July 10. The Coast Guard noted that SFFA had not "responded to either" of the Coast Guard's letters and invited SFFA to discuss "any such response" or "any suggestions for narrowing [SFFA's] requests." Ex. 1, ¶ 6. SFFA took neither action, instead calling the Coast Guard more than a week later to declare impasse, and then filing its motion the same day. Ex. 1, ¶ 7. That is not a good faith effort to narrow areas of disagreement, and it "is grounds for denial of a discovery motion." *All Assets*, 202 F. Supp. 3d at 6; *accord Alberts*, 405 B.R. at 501; *Crete Carrier*, 2022 WL 1203652, at *24.

### III. The Court Should Deny the Motion for Delay and Disruption to Impending Pretrial and Trial Deadlines

SFFA's substantial delay in pursuing its subpoena, and the ensuing prejudice to non-party Coast Guard and Defendants, as well as the disruption to Judge Bennett's case management order, provide further reason to deny the motion. *See, e.g.*, *Dag Enters. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104, 108-10 (D.D.C. 2005); *Crete Carrier*, 2022 WL 1203652, at *20-21. Fact discovery in the underlying litigation opened in January 2024, and closes imminently, on August 14, 2024.[2]

---

[2] The deadline for all expert reports, July 31, 2024, has already passed. No. 1:23-cv-2699, Dkt. No. 71 (D. Md.).

No. 1:23-cv-2699, Dkt. Nos. 61, 71 (D. Md.). More significantly, trial exhibit lists are due in less than two weeks, motions *in limine* are due in less than three weeks, and trial is scheduled to begin in just six weeks. *Id.*, Dkt. No. 71. Yet with full knowledge of the expedited discovery schedule and the extremely compressed post-discovery pre-trial schedule, SFFA waited months to issue its subpoena, and even after receiving non-party Coast Guard's timely objections, waited weeks more to seek enforcement. In full recognition of the prejudice and disruption caused by its own delay, SFFA asks the Court to require non-party Coast Guard's production within two weeks of an order enforcing the subpoena—an artificially compressed timeline that would be extremely prejudicial to and not feasible for non-party Coast Guard to meet. *See* Ex. 2, Declaration of CAPT Andrew Behnke, ¶ 11.

But even under the terms of SFFA's request, there is no circumstance in which such production could be made before the close of discovery and service of trial exhibit lists on August 14. Nor is there a circumstance in which such production could be made with enough time for Defendants to move *in limine* by August 21 for the documents' exclusion from trial, for Judge Bennett to resolve motions *in limine* before trial, and for trial to begin in just six weeks with the full disclosure of the universe of documents and testimony to be presented at trial.

Indeed, as the Coast Guard correctly noted in its June 18 response, the information sought through SFFA's subpoena would only "lead to greater Coast Guard involvement in the case"— notwithstanding the Coast Guard's status as a non-party—as "[b]oth parties would desire more information about causal factors" to explain the information sought from the Coast Guard. Dkt. No. 1-2, Ex. D. At this stage of the litigation, on the eve of pre-trial filings and mere weeks from trial, SFFA's request will inevitably upend a trial schedule that has long been in place.

In short, "there is now no practical way that the [subpoenaed information] could be

7

produced in time to be analyzed by expert witnesses or presented at trial," and that inevitability "is attributable solely to [SFFA's] strategic decisions throughout discovery." *Texas v. Holder*, 2012 WL 13070110, at *3-4 (D.D.C. June 8, 2012) (denying motion to compel); *see also Ike-Ezunagu v. Deco, Inc.*, 2010 WL 4822511, at *2 (D. Md. Nov. 22, 2010) (denying "emergency motion" to compel "[g]iven Plaintiff's dilatoriness" and the fact that the discovery could not be undertaken by the deadlines in the court's scheduling order "without imposing on [the subpoena recipients] an undue burden").

### IV. The Court Should Deny the Motion for Lack of Relevance and Undue Burden on a Non-Party

SFFA's subpoena additionally fails to satisfy Rule 45's strict standards governing relevance and burden—particularly acute for requests directed at a non-party such as the Coast Guard—and the Court should therefore deny the motion.

#### A. SFFA Does Not Correctly Apply Rule 45

At the outset, SFFA's motion ignores the heightened standard that applies under Rule 45. Discovery served on a non-party government agency under Rule 45 "must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'" *Watts*, 482 F.3d at 509. Accordingly, the subpoena must "avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45(d)(1), and "courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally," *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). *Accord Watts*, 482 F.3d at 509 (citing additional circuit court of appeals cases emphasizing the importance of closely examining subpoenas issued to non-parties). SFFA's motion omits any consideration of the Coast Guard's non-party status and

falls far short of the even more demanding and sensitive inquiry required for non-parties.

### B. SFFA's Subpoena Does Not Seek Relevant Information

SFFA's motion also fails at the threshold because its subpoena does not seek information relevant to the underlying claims against the Naval Academy. The subpoena seeks documents about the Coast Guard Academy regarding (1) the Coast Guard Academy's "programs, initiatives, strategies, plans, or other organized efforts"—from more than 10 years ago—to increase the number or percentage of "all applicants, admitted students, and/or matriculants" who are racial or ethnic minorities; and (2) the number of "applicants, admitted students, matriculants, and graduates of each race for the Coast Guard Academy Classes of 2008 [through] 2017." Dkt. No. 1-2 at 14.[3] SFFA contends that these requests are relevant because they "seek additional evidence to undermine the Naval Academy's assertion that no race-neutral alternatives exist." Dkt. No. 1 at 5. This argument is wrong several times over.

Neither category of documents is relevant to the underlying claims against the Naval Academy because the two academies are not appropriate comparators. *See, e.g.*, *Ross v. U.S. Capitol Police*, 2023 WL 4562924, at *8 (D.D.C. Apr. 27, 2023) (denying motion to compel information on individuals who are not relevant comparators); *Coleman v. District of Columbia*, 275 F.R.D. 33, 37-38 (D.D.C. 2011) (similar, and cautioning that "the relevance standard is 'not so liberal as to allow a party to roam in shadow zones of relevancy'"). As the Coast Guard has

---

[3] SFFA incorrectly states that the Coast Guard does not dispute the relevance of the first request. Dkt. No. 1 at 5. As reflected in the Coast Guard's June 18 letter, incorporated by reference in its July 10 letter, both of SFFA's requests appear to be intended to argue "that the racial diversity of an entering military academy class can be increased using methods other than considering race," and the Coast Guard explained at length why "the Coast Guard's admissions practices are not relevant to the Naval Academy's distinct admissions process." Dkt. No. 1-2 at 37; *see also id.* at 36 (articulating the difficulty "determining what, if any, probative value such evidence would have in this case").

explained, the Coast Guard Academy is an entirely different service academy, under a different Executive Department (the Department of Homeland Security, versus the Department of Defense for the Naval Academy), with a different mission and applicant pool, with a dramatically different class size (less than 300 at the Coast Guard Academy, versus more than 1,100 at the Naval Academy), and with significantly different admissions processes (most notably, no congressional nomination system at the Coast Guard Academy, versus the congressional nomination system that accounts for the vast majority of appointments at the Naval Academy). Dkt. No. 1-2, Ex. B; *see also* Ex. 2, ¶¶ 12-13.[4] As a result of these fundamental differences, the Coast Guard Academy's efforts to increase the diversity of its distinct student body more than 10 years ago has no probative value on the Naval Academy's present efforts to increase the diversity of its brigade of midshipmen. Indeed, the very premise of SFFA's argument—that the Naval Academy does not employ race-neutral alternatives, *see* Dkt. No. 1 at 5-6—is incorrect and has been disproven by copious documents and testimony obtained from the Naval Academy during the discovery period. *See, e.g.*, No. 1:23-cv-2699, Dkt. No. 46-2 ¶¶ 79-80, 91-99 (D. Md.).

This lack of relevance alone warrants denying SFFA's motion, and all the more so given the Coast Guard's status as a non-party. *Jordan*, 921 F.3d at 188-89; *Watts*, 482 F.3d at 507.

C. <u>SFFA's Requests Impose an Undue Burden</u>

The undue burden of SFFA's subpoena—a burden SFFA refused to mitigate, as Rule 45(d) requires—further confirms that the Court should deny the motion.

First, SFFA's requests are necessarily unduly burdensome because of their lack of

---

[4] SFFA's reliance on general references to "service academies" in prior cases, Dkt. No. 1 at 5-6, reveals its inability to contest the specific, meaningful differences the Coast Guard Academy identified in both its correspondence and the attached evidence. *See* Dkt. No. 1-2 at 36-38; Ex. 2, ¶¶ 12-13.

10

relevance. *See, e.g.*, *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010) ("The compulsion of production of irrelevant information is an inherently undue burden."); *Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, at *2 (D. Nev. Dec. 19, 2013) ("Plaintiffs' subpoenas subject persons 'to undue burden' as a matter of law because the subpoenas seek irrelevant information."); *see also* Ex. 2, ¶ 12.

Second, SFFA's requests are unduly burdensome on their face, as they seek information from the entirety of the Coast Guard Headquarters and six other entities within the Coast Guard Academy—comprising approximately 4,000 rotating individuals every 2-4 years—across a more than 10-year period. *See* Ex. 2, ¶ 5; Dkt. No. 1-2 at 17. Just the process of identifying those individuals alone—not even accounting for the ensuing time required for search and review of documents—would take approximately 1,000 hours. Ex. 2, ¶ 5. Such broad, unduly burdensome requests cannot be sustained even against parties to a litigation, let alone a non-party such as the Coast Guard. *See, e.g.*, *Brown v. Chemonics Int'l*, 2022 WL 22233224, at *6-7 (D.D.C. Mar. 22, 2022) (rejecting requests that would require a party to search companywide across thousands of employees); *Diaz v. Md. Nat'l Capital Park Police*, 2006 WL 8457045, at *2 (D. Md. June 12, 2006) (rejecting "the use of a five year period and the failure to specify any terms or parameters" in a subpoena to a non-party).

Third, even narrowing SFFA's requests to the Coast Guard Academy Admissions Office, as the Coast Guard did in responding to the subpoena, does not resolve the undue burden. As the Coast Guard has explained, the burden is multi-fold. First, only three of the people who worked in the Admissions Office during the requested time period still work there, and all three held low-level positions that would not make them a likely source for responsive documents. Ex. 2, ¶ 7. Nevertheless searching their files despite their lack of relevance would entail significant effort for

a likely futile result. Second, because the former employees (including the Director of Admissions and Deputy Director from the requested time period) cannot provide their institutional knowledge as to the location and existence of any responsive material, the subpoena would require current personnel to review the entirety of those former employees' files and the Admissions Office's digital files across a more than 10-year period. That search and review could take more than 4,000 hours. Ex. 2, ¶¶ 8-9; *see also id.* ¶ 10. The Coast Guard Academy Admissions Office simply does not have the resources to undertake such a search: it is significantly understaffed, its current employees are engaged full-time on mission-critical and time-sensitive work that they are employed by the Coast Guard to perform, and even diverting personnel to respond to the subpoena would still require more than a year's worth of time to complete the search. Ex. 2, ¶ 11. Extensive caselaw holds that Rule 45 does not permit these burdens on a non-party. *See, e.g.*, *Watts*, 482 F.3d at 509 (Rule 45 "must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations'"); *Jordan*, 921 F.3d at 189-90 ("A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it."); *N.C. Right to Life v. Leake*, 231 F.R.D. 49, 52 (D.D.C. 2005) ("It is a great burden to require an organization to sacrifice such a large proportion of its staff for several weeks," "particularly in light of the fact that [the subpoena recipient] is neither a party, nor even an amicus, in the underlying action.").

Fourth, SFFA's lack of need for the requested material solidifies the subpoena's undue burden. *See, e.g.*, *Jordan*, 921 F.3d at 189 (holding that courts should consider "the requesting party's need for" the information and "what information is available to the requesting party from other sources"); *Fuerth v. Winarsky*, 2006 WL 1896094, at *2 (D. Md. Apr. 18, 2006) ("Even if

12

the information sought is relevant, discovery is not allowed where no need is shown…."). By SFFA's own admission, it already has the material it needs to attempt its desired comparison between the Coast Guard Academy and the Naval Academy; its subpoena here simply "seek[s] *additional* evidence." Dkt. No. 1 at 5 (emphasis added). Indeed, SFFA cites to public information that "the Coast Guard regularly publishes," *id.* at 7, and SFFA has already served expert reports that offer opinions based on the Coast Guard's admissions process over the time period covered by SFFA's subpoena.[5] Caselaw does not support the imposition of the significant burdens on non-party Coast Guard here when SFFA has not shown genuine "substantial need." *See also* Fed. R. Civ. P. 45(d)(3)(C)(i).

SFFA cannot overcome these substantial burdens on non-party Coast Guard. At bottom, SFFA's attempt to resist these demonstrated burdens reflects its effort to treat the Coast Guard as "a defendant." *See* Dkt. No. 1 at 7. But the Coast Guard is not a defendant. In light of the Coast Guard's non-party status, the lack of relevance of the information SFFA seeks, and the substantial undue burden of SFFA's subpoena, the Court should deny the motion to compel.

## CONCLUSION

For the foregoing reasons, non-party Coast Guard respectfully requests that the Court (whether the compliance court or, in the event of transfer, the issuing court) deny SFFA's motion to compel.

---

[5] Because SFFA has designated its expert reports Highly Confidential under the protective order in the underlying litigation, an excerpt of the portions discussing the Coast Guard is not attached to this filing. If the Court wishes to see the reports, counsel for the government will take appropriate action to provide them to the Court.

Dated: August 1, 2024

Respectfully submitted,

BRIAN M. BOYTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

 /s/ Catherine M. Yang
JOSHUA E. GARDNER
Special Counsel
CHRIS EDWARD MENDEZ
JOHN ROBINSON
CATHERINE M. YANG
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-4336
Email: catherine.m.yang@usdoj.gov

MEDHA GARGEYA
Counsel
U.S. Department of Justice
Civil Division, Office of the Assistant Attorney General
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Non-Party United States Coast Guard*